**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 22-20144-Civ-GAYLES/TORRES

RICHARD R. FINCH,

    *Plaintiff,*

v.

HARRY WAYNE CASEY, an individual; and
HARRICK MUSIC INC., a Florida corporation,

    *Defendants.*

_____/

## ORDER ON THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on the parties' cross Motions for Summary Judgment filed by Harry Wayne Casey ("Casey") and Harrick Music, Inc. ("Harrick") (collectively, "Defendants") [D.E. 51], and Richard R. Finch ("Finch" or "Plaintiff") [D.E. 63]. The parties filed timely responses [D.E. 72, 73] and replies [D.E. 75, 76] to each motion therefore the motions are now ripe for disposition.[1]  After careful consideration of the briefing materials, the evidence of record, the relevant authorities, and for the reasons discussed below, Defendants' Motion for summary judgment is GRANTED, Plaintiff's Motion is DENIED as moot, and the case is dismissed with prejudice.

_____

[1] On April 1, 2022, the parties consented to the jurisdiction of the Undersigned Magistrate over all matters, including dispositive motions, but not for trial. [D.E. 32 at 3].  Pursuant to the parties' consent, the Honorable Darrin P. Gayles referred the case to the Undersigned for a ruling on all non-dispositive and dispositive matters on November 8, 2022.  [D.E. 79].

## I.  BACKGROUND

This is an action for declaratory relief pursuant to Section 203 of the Copyright Act of 1976 (the "Act").  17 U.S.C. § 201 *et seq.*  Finch filed this action on November 11, 2022, seeking a declaration that he has properly exercised his termination rights under § 203 with respect to a 1983 agreement whereby he allegedly transferred his copyright interests in ninety-nine songs to Casey.  [D.E. 1].  According to Finch, the ninety-nine songs were co-written by him and Casey in the 1970s while they were members of the musical group KC & The Sunshine Band (the "Band").  [D.E. 41]. Between the mid-1970s and early-1980s, the Band, Casey, and Finch, executed several musical commercial agreements, including exclusive writer's, single song, and publishing agreements with Sherlyn Music Publishing Co., Inc. ("Sherlyn").[2] [D.E. 64-3; 64-6; 64-10].  In essence, these agreements transferred to Sherlyn a 50% ownership interest in the copyrights of the Band's songs.  [D.E. 64 at 2–3; 52 at 3–4]. Further, in connection with these agreements, Casey and Finch formed a Florida corporation, co-defendant Harrick Music Inc. ("Harrick"), which they designated as their "publishing designee" and which Casey and Finch co-owned on a 50/50 basis. [D.E. 64 at 3].

After several years of performing together, Casey and Finch separated in 1979 and on October 27, 1983, they formally severed all personal and financial ties through the execution of an agreement titled "Property Division Agreement" (the "1983

---

[2] On April 27, 2022, Finch filed an amended complaint that dismissed Sherlyn's successor in interest, EMI Consortium Songs Inc., as a defendant from this lawsuit pursuant to private settlement.  [D.E. 41; 95].

Agreement"). [D.E. 52-6]. With the agreement, Casey and Finch divided amongst themselves various pieces of tangible and intangible property that they had previously owned together. *Id.* Among other things, the contract provided that, in exchange for valuable consideration, Finch would transfer to Casey all his titles, rights, and interests in any of the copyrights of their music, as well as his 50% ownership interest in Harrick and other Band related enterprises. [D.E. 52-1 at 96–98; 52-6; 64-8 at 107–09]. The agreement contains an exhibit titled "INTANGIBLES ASSIGNMENTS" that expressly conveyed to Casey all of Finch's interests in any intangible assets, including copyrights and intellectual property. [D.E. 52-1 at 37]. However, soon after execution of the contract Finch sought to rescind the agreement on grounds of fraud and incapacity, but a state court rendered judgment in favor of Casey, upholding the agreement's validity and enforceability in 1986. [D.E. 52 at 5–6; 64-15].

Finch tried again. In the years following the 1986 declaratory judgment, Finch continued to challenge Casey's ownership over some of the Band's songs. To settle this song dispute, Finch and Casey executed a settlement agreement in 2003 (the "2003 Agreement"). [D.E. 64-19]. In 2004, Casey return to state court seeking contempt sanctions against Finch for his violations of the 1986 declaratory judgment. The court issued a sanction order against Finch and reiterated the validity of both the 1983 Agreement and the 1986 declaratory judgment. [D.E. 64-24].

Fast-forward a few years and on August 30, 2012, Finch, through his then-counsel Brent McBride, and pursuant to § 203(a) of the Copyright Act, served a notice

of termination (the "2012 Notice") on Casey and Harrick seeking to terminate the copyright grants that he allegedly made to Casey through execution of the 1983 Agreement.  [D.E. 52 at 7; 64 at 9–10; 64-25].  The 2012 Notice contained an effective termination date of October 28, 2018.  [D.E. 64-25 at 12].  Casey did not respond to this notice.  Almost three years later, on May 7, 2015, Finch's new lawyer, well regarded entertainment attorney Richard Wolfe, sent a letter to Casey's counsel concerning the 2012 Notice and attaching a copy of the notice.  [D.E. 52-10; 52-12 at 10–11].  This time, Casey responded to Finch's notice in a letter drafted by his long-time attorney, Franklin Zemel, on May 26, 2015.  [D.E. 52-11].  Casey's response directly challenged the validity of the 2012 Notice and expressly repudiated Finch's claim of authorship over any of the ninety-nine songs, denying any significant involvement by Finch in the creation of the musical compositions.  *Id.*

Finch never replied to Casey's repudiation letter and no action was taken in furtherance of the 2012 Notice or in opposition to Casey's challenge to its validity. Instead, fast-forward another seven years to September 30, 2019, when Finch's new counsel, Evan Cohen, served another notice of termination (the "2019 Notice") on Casey and Harrick, wherein Finch claimed entitlement, for the second time, to terminate the alleged copyright transfer of the 1983 Agreement.  The 2019 Notice displayed an effective date of termination of October 1, 2021.  [D.E. 64-1].  Following an October 1, 2021, response from Casey's attorney that disputed, once more, the validity of the termination notice, [D.E. 41-4], Finch filed this single-count lawsuit

4

seeking a declaration that he has validly exercised his termination rights under § 203 of the Act.

Based on these undisputed facts, both Casey and Finch have filed cross-motions for summary judgment.  As explained further below, we find that the undisputed facts warrant dismissal of Finch's claim because, as a matter of law, his copyright termination action is barred the applicable statute of limitations, which precludes this Court from adjudicating his claim.[3]  Accordingly, Defendant's motion for summary judgment [D.E. 51] is GRANTED and Plaintiff's motion for summary judgment [D.E. 63] is DENIED as moot.

## II.  APPLICABLE PRINCIPLES AND LAW

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  On summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the

---

[3] Because Casey is entitled to judgment as a matter of law on his statute of limitations defense and this defense is dispositive of the case, we do not address any of the remaining arguments in Defendant's motion.

motion. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597 (1986) (quoting another source).

At the summary judgment stage, the Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986). In making this determination, the Court must decide which issues are material. A material fact is one that might affect the outcome of the case. *See id.* at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). "Summary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

## III.  ANALYSIS

The predicate question before the Court is relatively straightforward: whether Finch's declaratory judgment action under § 203 of the Copyrights Act falls outside the act's three-year limitations period. Defendant's motion argues that it does. According to Casey, the statute of limitations on Finch's lawsuit elapsed in May 2018, which renders this lawsuit—commenced in November 2022—untimely. [D.E. 51 at 9]. Specifically, Casey highlights that copyright claims that turn on ownership, or authorship (as opposed to infringement), accrue only once. In Finch's case the accrual point happened in May 2015, when Casey's lawyer sent a response letter to Finch's

attorney expressly invalidating the 2012 Notice of Termination and challenging Finch's claim of authorship over the ninety-nine songs. *Id.* at 10–11.

Finch, on the other hand, opposes summary judgment on Defendant's statute of limitations defense, primarily on two grounds. [D.E. 72].  First, Finch argues that Casey's statute of limitations defense is itself time-barred and, as such, cannot be considered by this Court.  In doing so, Plaintiff essentially asks this Court to treat Casey's Rule 8(c) affirmative defense as a counterclaim that sounds on copyright ownership, as to make it subject to the Act's three-year limitations period. *Id.* at 4–6.  Second, Finch asserts that, under Eleventh Circuit precedent, the May 2015 response letter that Casey sent to Finch's lawyer was not sufficient to place Finch on notice of Casey's claim of sole authorship, which means that the statute of limitations on Finch's claim could not have started ticking in 2015. *Id.* at 7–9.  Implicitly, Finch seems to suggest that his § 203 claim could not have accrued prior to the effective date of termination outlined in his 2019 Notice.  If that is the case, then Casey's summary judgment premised on his statute of limitations defense cannot succeed.

### A.  *Casey's Statute of Limitations Defense is not Time-Barred*

We start by addressing Finch's first argument in opposition to Casey's motion for summary judgment; namely, that this Court cannot consider Casey's Rule 8(c) statute of limitations defense because this defense is itself untimely.  Plaintiff asks the Court to overlook the fact that his lawsuit may fall outside the time limits prescribed by the Copyright Act, and instead focus on preventing Defendant from asserting his statute of limitations defense because it is itself time barred.  Plaintiff's

convoluted argument on this score, which is devoid of much supporting authority, fails to persuade us why the limitations period on his original claim has not run.

For starters, Plaintiff's argument misconstrues the nature of Casey's Rule 8 affirmative defense. According to Plaintiff, "[t]he gravamen of Casey's first ground for summary judgment is that Finch cannot prevail in his claim for declaratory relief because the Notice of Termination is invalid on the ground that Finch is not an author." [D.E. 72 at 3]. Not so. Defendant's first ground for summary judgment is that Plaintiff failed to file suit within three years after his § 203 claim accrued, rendering his November 2022 lawsuit untimely. *See* 17 U.S.C. § 507(b) ("No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued.").

Yet, Plaintiff repeatedly, and confusingly, conflates the substance of Casey's response letter to the 2012 Notice—which disputed authorship—with the statute of limitations defense asserted in Casey's Answer, and then proceeds to portray Casey's defense as a *claim* or *counterclaim* that this Court should subject to the Act's three-year statute of limitations. [D.E. 72 at 4] ("[t]he question of whether Casey *currently* has a *timely* 'sole authorship' **claim** is crucial") (third emphasis added). We find no basis to accept Finch's self-serving description of Casey's limitations defense as a "claim." Casey's motion for summary judgment is premised on his fourth affirmative defense ("Claim Barred by Statute of Limitations"), not his third one ("Not an Author"), [D.E. 42 at 6], and Finch fails to cite a single analogous case supporting this arbitrary reformulation of Casey's statute of limitation argument. *See id.* at 4–6. As

8

noted earlier, Casey's limitations theory is asserted in his answer to Plaintiff's FAC pursuant to Rule 8(c), and does not seek damages or any other affirmative relief from Plaintiff.  [D.E. 42 at 6].  That is significant. *See Estate of Hogarth v. Edgar Rice Burroughs, Inc.*, 342 F.3d 149, 163 (2d Cir. 2003) ("A defendant who is not seeking any affirmative relief and who asserts a defense only to defeat a plaintiff's claim is not barred by a statute of limitations"); *U.S. for Use of Bros. Builders Supply Co. v. Old World Artisans, Inc.*, 702 F. Supp. 1561, 1569 (N.D. Ga. 1988) (stressing the "common law rule that statutes of limitations do not run against pure defenses").

While Plaintiff urges this Court to ignore the "general rule that a statute of limitations does not bar mere defenses as distinct from counterclaims," *Everly v. Everly*, No. 3:17-CV-01440, 2020 WL 5642359, at *9 (M.D. Tenn. Sept. 22, 2020), nothing in Finch's brief or the available record persuasively lead us to that conclusion. Indeed, the very same cases on which Plaintiff purports to rely underscore the weakness of his arguments with respect to both the application of statute of limitations to affirmative defenses and the accrual of a copyright ownership claims.

For instance, Plaintiff cites to *Complex Systems*, a case that dealt with a copyright infringement claim where the defendant asserted a *joint ownership* defense that was predicated on an alleged ownership interests belonging to a third, non-party actor.  *Complex Sys., Inc. v. ABN Ambro Bank N.V.*, 979 F. Supp. 2d 456, 473 (S.D.N.Y. 2013).  Besides the glaring factual differences between that case and the one at hand, including the role of non-parties and the absence of a *statute of limitations defense*, the court in *Complex Systems* actually rejected Finch's theory by

expressly noting that if it were the non-party asserting the joint ownership defense, the defense would be allowed to proceed even though the claim would not be allowed if it were seeking affirmative relief. *Id.* at 474 ("Put another way, if IT were the defendant to this [] case, it may very well be able to assert that it cannot infringe that which it owns. That affirmative defense may or may not prevail, but it would be allowed"); *see also Scorpio Music (Black Scorpio) S.A. v. Willis*, No. 11CV1557 BTM RBB, 2013 WL 790940, at *3 (S.D. Cal. Mar. 4, 2013) (involving a counterclaim rather than a defense, and observing that the Act's statute of limitations bars § 203 termination claims "brought more than three years after plain and express repudiation of the ownership claim.").

This is not a case in which Casey can be deemed to be a defendant in an aggressor's posture, trying to use an affirmative defense as a sword rather than a shield to disturb some long-lasting status quo between the parties. *Cf. Donald Everly v. Everly*, 536 F. Supp. 3d 276, 283–84 (M.D. Tenn. 2021) (barring affirmative defense that mirrored defendants' ownership counterclaim, where defendants "sought to topple the status quo under which [plaintiff] had been operating since 1980"). As noted above, Casey has not pled counterclaims, nor is he seeking any damages or affirmative relief from Finch. Moreover, the underlying facts in this case indicate that it is Finch who has engaged in repeated efforts, some of which date back to the 1980s, to disturb or attack the existing state of affairs established by the parties through execution of their 1980 and subsequent agreements. In this respect, we are at a loss to see how this long and adversarial historical backdrop between the parties,

10

which according to Finch imputes to Casey unclean hands that should preclude him from even asserting a statute of limitations defense, does not likewise bar Finch from continuing to prosecute this stale, protracted and long-lasting dispute.

In sum, Plaintiff's claim that this Court should not consider Casey's statute of limitations defense because this defense is itself time-barred, is legally unsound and unpersuasive.  Not only does Finch mischaracterize the nature of Case's asserted defense, but it also cherry-picks authorities that, when properly read, lend more support to Casey's arguments than to Finch's.  Accordingly, the Court finds no basis for preventing Casey from asserting his statute of limitations defense.  We thus must address the merits of that defense based on the existing record.

B.    <u>*Finch's § 203 Lawsuit is Barred by the Act's Statute of Limitations*</u>

Next, we turn to Casey's argument that Finch's lawsuit is barred by the Act's statute of limitations.  Because the undisputed facts show that, as a matter of law, Finch's § 203 claim accrued no later than May 2015, this lawsuit is barred by the Act's three-year limitations period, and Defendant is entitled to summary judgment on his statute of limitations defense.

The Copyright Act provides authors with termination rights, which allow them to terminate "the exclusive or nonexclusive grant of a transfer or license of copyright or of any right under a copyright."  17 U.S.C. § 203(a) (providing right to terminate post-1978 grants between thirty-five and forty years after the grant).  Under the Act, authors are thus entitled to terminate certain grants and recapture ownership in their works after a period of time.  § 203 provides for the effectuation of a termination

11

by service of "an advance notice in writing, signed by the number and proportion of owners of termination interests required under clauses (1) and (2) of this subsection, or by their duly authorized agents, upon the grantee or the grantee's successor in title." *Id.* § 203(a)(4).  The notice must state an effective date of termination and must be served not less than two or more than ten years before that date.  *Id.* "However, regardless of the effective date, under § 203(b)(2), '[t]he future rights that will revert upon termination of the grant become vested *on the date the notice of termination has been served.*'"  *Baldwin v. EMI Feist Catalog, Inc.*, No. 11-81354-CIV, 2012 WL 13019195, at *2 (S.D. Fla. Dec. 11, 2012) (emphasis in original).

Furthermore, all copyright claims are subject to a three-year statute of limitations.  Section 507(b) provides that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."  Claims for infringement and claims for ownership are subject to different accrual standards.   A claim that sounds in ownership, as in this case, "accrues only once": at the point in time when plaintiff "knew, or reasonably should have known, that his ownership rights [] were being violated."  *Webster v. Dean Guitars*, 955 F.3d 1270, 1276 (11th Cir. 2020); *see also Kwan v. Schlein*, 634 F.3d 224, 228 (2d Cir. 2011) ("An ownership claim accrues only once, when 'a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right.'"); *Santa-Rosa v. Combo Records*, 471 F.3d 224, 228 (1st Cir. 2006) ("[A] claim for declaratory judgment of ownership accrues when the plaintiff 'knew of the alleged grounds for the ownership claim.'"), *cert. denied*, 550 U.S. 926 (2007).

Given this well-established principle, we are bound to agree with Casey that the undisputed facts show that Finch's lawsuit falls outside § 507(b)'s limitations period. As a threshold matter, we start by noting that Plaintiff fails to affirmatively dispute that Mr. Wolfe was his attorney and acted in that capacity on May 7, 2015, when he sent the termination notice to Casey's counsel. Although Plaintiff attempts to suggest a dispute of material fact with regards to this attorney-client relationship, any purported "dispute" on this fact would be limited to Plaintiff's alleged lack of recollection of Mr. Wolfe's retention during his deposition. [D.E. 52-1 at 24–27] ("Q. Okay. And do you know another lawyer named Richard Wolfe?  A. Vaguely. Those were not good times for me"; "Q. Okay. But you don't remember hiring Richard Wolfe to act as you lawyer?  A.  Probably I don't remember, because that whole thing was ineffective and, yeah, I don't -- yeah, I don't know how to answer you correctly[.]"). This non-denial denial is plainly insufficient to create a dispute of fact, particularly in light of the fact that other parts of the uncontroverted record affirmatively establish that Mr. Wolfe was indeed Finch's attorney.  [D.E. 52-10 at 2] ("We have been asked to represent Richard Finch in connection with his 17 U.S.C. § 203 termination rights. . . . Please address all further communications relating to Mr. Finch to me."); [D.E. 52-12 at 11] ("Q.  I appreciate that. But when you wrote this letter, was it your understanding you were also representing Mr. Finch?  A. Yes."); [D.E. 64-8 at 174–175] (conceding that "Mr. Zemel had sent a letter back to Mr. Finch's attorney, saying 'you know what?' Finch was never an author."); [D.E. 52-12 at 6] ("MR. WEISS: We're going to be asserting the attorney/client privilege on any

13

communications that are taking place -- that took place between Richard, and Finch, and his attorneys.  MR. ZEMEL: That includes Richard Wolfe as one of his attorneys? MR. WEISS: That is correct.").

It is likewise undisputed that Casey's May 26, 2015, response to Finch's termination notice clearly and expressly disputed Finch's authorship claim, as well as his corollary termination rights under § 203.  [D.E. 71 at 3].  In pertinent part, Casey's repose letter stated the following:

> At no time was Finch an "author" of the music under the Copyright Act. The U.S. Supreme Court defines "author" as "the party who actually created the work, that is, the person who translates an idea into fixed, tangible expression entitled to copyright protection."  Finch did not actually create the songs Casey wrote for KCSB and Finch did not contribute any significant copyrightable material to those songs. Accordingly, Finch would have the burden of proof of establishing his status as an "author", not just one with whom Casey shared credit.  He therefore has no termination rights under Section 203(a), as explained below.

[D.E. 52-11 at 2].

According to Finch, however, these undisputed facts were not enough to trigger the statute of limitations on his termination claim back in May 2015.  Purporting to rely on the Eleventh Circuit's holding in *Webster*, Finch claims that Casey cannot "establish that when his lawyer sent that letter [to Mr. Wolfe] in 2015 'repudiating' Finch's co-authorship, a reasonable person in Finch's position would have 'learned that his rights were being violated' as required under the *Webster* accrual approach.'" [D.E. 72 at 7–8].  This too is plainly incorrect as Finch's reliance on *Webster* is utterly misplaced for several reasons.

14

For starters, Finch fails to understand the court's holding.  Finch suggests that

under *Webster* a written and express repudiation of one's copyright ownership, as the

one in this case, will not suffice to trigger accrual of an ownership derivate claim for

statute of limitations purposes.  This follows from Finch's confused reading of the

court's discussion about the two accrual approaches applied to ownership claims by

different Circuit Courts.  *See Webster*, 955 F.3d at 1276 (observing that the Sixth and

Nineth Circuits apply the "repudiation test", whereas the First, Second, Fifth, and

Seventh apply what is known as the "discovery rule").  Although the Eleventh Circuit

in *Webster* adopted the discovery rule rather than the repudiation approach for

determining accrual in the ownership context, this does not mean, as Finch suggests,

that direct statements from one party to the other claiming exclusive authorship—

and, hence, repudiating ownership—cannot constitute a valid form of notice for the

purposes of § 507(b) accrual.[4]  To the contrary, as *Webster* itself made clear, a

communication expressly repudiating plaintiff's ownership claim can, and does,

sufficed to trigger accrual of a copyright ownership derivate claim:

> Webster had reason to know that his alleged ownership rights were
> being violated as early as 2004, when he first learned that Dean was
> producing DFH reissues. But if that were not sufficient to put him on
> notice that his rights were being violated, ***Rubinson's email in 2007***

---

[4] Without exploring what the "repudiation rule" means, Finch improperly conflates
this with any means of repudiation, including direct and express statements of
exclusive authorship from one party to the other.  [D.E. 72 at 7–8].  However, to say
that *Webster* forecloses all forms of repudiation in general from triggering accrual of
an ownership related claim completely distorts the ruling.   Instead, it is more
accurate to say that in bypassing the "repudiation rule", the court simply steered
away from less straightforward methods of repudiation that have been deemed
sufficient under that rule in other jurisdictions.  *See, e.g., Aalmuhammed v. Lee*, 202
F.3d 1227, 1231 (9th Cir. 2000) (authorship sufficiently repudiated when movie
credits listed plaintiff far below the more prominent names).

> stating that "the consensus concerning [the lightning storm graphic] is that [Abbott's] estate is the legal owner of it" *was certainly sufficient*.

*Webster*, 955 F.3d at 1276 (finding that ownership claim was barred by the statute of limitations, and reaffirming grant of summary judgment in favor of defendant) (emphasis added).

As in *Webster,* the record here indicates that Casey sent a letter in response to Finch's notice of termination to Finch's attorney in May 2015, and that such response letter expressly and directly called into question Finch's claim of authorship over the songs, as well as his right to effectuate termination under § 203. That was "certainly sufficient" to place Finch on notice that Casey was affirmatively challenging his authorship and termination rights over these songs. *See id.*;[5] *see also Caracol Television, S.A. v. Telemundo Television Studios, LLC*, No. 18-CV-23443, 2021 WL 243695, at *6 n.7 (S.D. Fla. Jan. 25, 2021) (Gayles, J.), *aff'd*, No. 21-10515, 2022 WL 202546 (11th Cir. Jan. 24, 2022) ("it is likely that Caracol's copyright claims [] are barred by the Copyright Act's three-year statute of limitations. See 17 U.S.C. § 507(b). Caracol learned that Telemundo claimed complete ownership in the copyright of the Subsequent Seasons and Spinoff in August 2014, [via letter sent to plaintiff's attorney, which repudiated plaintiff's ownership claim], but did not file this action until August 23, 2018.").

---

[5] Something that Plaintiff seemed to concede in his original complaint, but omitted from his FAC. *See* [D.E. 1 ¶ 33] (observing that with their responses "Casey and Harrick have stated their clear intent to not honor the Notice served by Finch, regarding any works, and Casey and Harrick have thereby *created an actual* and *immediate* disagreement with Finch") (emphasis added).

16

Turning to Finch's implied suggestion that an action for termination rights under § 203 cannot accrue prior to the notice's effective date of termination, our review of the law shows otherwise.  Indeed, this argument was expressly rejected by this district court in *Baldwin v. EMI Feist Catalog, Inc.*, No. 11-81354-CIV, 2012 WL 13019195, at \*1 (S.D. Fla. Dec. 11, 2012).  In *Baldwin*, the court refused to grant a motion to dismiss for lack of ripeness in a lawsuit seeking declaratory judgment under § 203.  The defendant in *Baldwin* argued that plaintiff's declaratory action was subject to dismissal because "claims based on a notice of termination under § 203 do not 'accrue' until the effective date of the notice," and, since the effective date of the relevant notices had not yet passed, plaintiff did not have an actionable cause of action.  *Id.* at \*2.  The court rejected defendant's argument, and found that as soon as defendant repudiated plaintiff's notice of termination in writing, plaintiff was provided with an actionable lawsuit regarding the validity of his notices, and this lawsuit was one the court had jurisdiction to adjudicate:

> By purporting to serve a valid § 203 notice upon Defendant, which notice Defendant has repudiated, Plaintiffs have created a controversy as to whether "[t]he future rights that will revert upon termination of the grant [have] become vested," as provided by the statute. 17 U.S.C. § 203(b)(2). This controversy is therefore ripe and non-speculative, and the Court has jurisdiction to adjudicate it.

*Id.* at \*3.

Based on these precedents and the undisputed facts, it is evident that Finch's claim for termination under § 203 accrued in May 2015, when Casey sent a response letter to Finch's lawyer expressly challenging Finch's claim of authorship over all ninety-nine songs, as well as his corollary right to termination.  However, because

17

Finch did not file this lawsuit until November 11, 2022, his claim is barred by the Act's three-year statute of limitations. And Finch has not pointed us to any holding, in this Circuit or elsewhere, that undermines this established principle.

In sum, having found no genuine issues of material fact, we hold that Casey is entitled to judgment as a matter of law because Finch's original declaratory judgment action is now time-barred. As such, we grant summary judgment in Casey's favor.

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendants' Motion for Summary Judgment on the statute of limitations defense [D.E. 51] is **GRANTED**, and Plaintiff's cross Motion for Summary Judgment [D.E. 63] is **DENIED as moot**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 7th day of February, 2023.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge